Jessica Boyer v. Buol Properties Step up and identify yourselves. Your Honors, my name is Richard Craig and I represent the appellants, Buol Properties, Warner Buol and Helga Buol. My name is Mark Silverman and I represent the appellee, Jessica Boyer. It's basic 1515, but if we ask a lot of questions, then we'll give you some leeway in the time. So you may proceed.  Counsel, and may it please the Court, as I indicated, just lower that a little bit. My name is Richard Craig. I represent the appellants who are the defendants in this action. At the trial court, the principal issue was whether the parties agreed that the defendants would return a security deposit by means of certified mail at the plaintiff's expense. The defendants testified that that was the agreement and the plaintiff disputed that they had that agreement. More fundamentally with this case, though, is whether the court will allow the plaintiff to reap a windfall from what we assert is a wholly manufactured violation of the Chicago residential landlord and tenant ordinance. Respectfully, Mr. Craig, isn't the issue whether the ordinance allows that and not whether we will allow that? Because unless we find that the ordinance allows it, unless we find that the ordinance is unconstitutional or some other infirmity that would allow it to be abrogated, what choice would we have? Well, I believe that the ordinance does allow parties, landlord and tenant, to agree that the landlord will return at the plaintiff's expense security deposit by means of certified mail. And let's assume for purposes of argument that that's absolutely true. If there was a disputed issue of fact, as you began your statement with, and the court made its determination based upon that disputed issue of fact that there was no such agreement or that there was not sufficient proof that there was such an agreement, we can't substitute our credibility determination, because we weren't there at the trial, for that that the trial court did. I agree with what you just said in principle, but disagree with its application to these facts, and here's why. The trial court did not make a factual determination whether that agreement was made. It didn't get that far. The trial court ruled that the CRLTO prohibited that agreement. The trial court said, you can't do that under the CRLTO, even if the parties agree. And there are a number of things, certainly, that the CRLTO prevents the parties from agreeing to. One section sets forth a whole laundry list of things that a lease can't provide. And if a lease provided that and both parties signed off on that, that would be the parties agreeing to that, and the CRLTO saying, doesn't matter, it's a matter of public policy. Is it implicit in your argument, then, a request not for reversal, but for a remand for a determination of that issue? And if that issue goes against you, then your client would be, under the ordinance, paying even more in legal fees. I don't believe it's implicit in that I think an alternative request for relief is that if we get that far, that it be remanded for that determination. So I think it's explicit. But, yes, I agree with the fundamental premise, and that is that if we get that far, that is an issue that would need to be resolved, because as of today, that issue has not been resolved. The trial court concluded that the CRLTO, as a matter of public policy, precluded these people from coming to that agreement. So, on the matter of that principle, if we get that far, as you put it, you would be, in effect, asking for a remand, which, as I said, could substantially increase the amount of legal fees for the other side, let alone the legal fees, if any, that you are charging your clients, and I assume you are charging them, but I don't know, over getting a factual determination about whether there was such an agreement. It's definitely not our principal prayer for relief. And if it was, I think that the concerns you articulate would certainly counsel consideration of whether to bring the appeal in the first place. If that was the only thing we were seeking, please, remand, let's have another trial. While it's speculation, my strong, strong guess is that we wouldn't be here today. But that's an alternative request for relief. Our principal request for relief is outright reversal for several reasons. The principal reasons being that there was an accord and satisfaction, which, if it's the case, we don't need to get as far as that factual determination by the trial court. But with accord and satisfaction, you have to have an actual dispute between the parties. When your client mailed the check, there wasn't a dispute at that time. At least your client didn't think there was a dispute. Well, I agree that my client was unaware that the amount was disputed. But a dispute is inherent, and here's why. The plaintiff requested permission to get out of the lease early in the defendant's acquiesce. Because she already had another tenant. They had a new tenant ready to go in June 1. They arranged for a new tenant after the request. That's correct, and that's why it was easy to acquiesce. But they agreed, and they met at the end of May 2012 and did a walkthrough. And damage was noted. It was acknowledged, and the plaintiff agreed that the damage was her responsibility. And she initially asked for permission to repair it herself. Because as she testified at trial, she knew it would be expensive. And the defendants again acquiesced. They said, sure, you can fix it yourself. But she didn't fix it herself. So we have a tenant who has acknowledged not only the existence of damage, but has taken responsibility for it, and after failing to repair it herself, she knows that it's going to have to be repaired by another entity, and that's going to cost money. But the court found it was reasonable wear and tear. Correct. The court did make that finding. And in our brief, we assert that that was against the manifest weight of the evidence, given that everybody agreed that there was – in her own words, she said, it's going to be expensive to repair. Ordinary wear and tear is not dense in the paneling, and it's not expensive to repair. That's beyond ordinary wear and tear. And that was not only the bulk of the evidence, that was the entirety of the evidence. Nobody suggested that this was not substantial damage. That's why she asked for permission to repair it herself. Let's get to the paid receipt then. Sure. When your client just sent an uncashed check to show that they paid the contractor to repair, is that a receipt? And did that receipt, even if it was a receipt, show on its face what it was for? In conjunction with the itemization – to answer the second question first. In conjunction with the itemization that was sent along with the check, where it itemized the damage, and then you see the check written to the contractor for the same amount, I believe that that adequately sets forth what it was for. So there's an implicit, in your argument, there's an implicit, not explicit, explicit receipt. And there is an implicit but not an explicit accord and satisfaction because you've implied a dispute about the existence of the amount to be paid. You see, we're building, I won't say on a house of cards, but something that at least is not earthquake proof. And that's why I have difficulty with the concept of accord and satisfaction in this context. Well, we know that whatever – we know that there's 1575 in security deposit. And we know that there's acknowledged damage that she didn't repair. So we know that there's going to be some sum that is less than 1575. We don't know what that is. My client articulates a number, and if the plaintiff agrees with that number, then there's no dispute. But if the plaintiff disagrees with that number, and we know she does because litigation ensued, then there is a dispute. I don't – But how does the cashing of the check indicate accord and satisfaction? Well, under the cases that we cite, it does. And we cite MKL versus – okay. Right. But there are also cases that go the other way that your opponent has cited. But I believe that the cases that we've cited where a check was given, along with a mailed itemization, for instance, in MKL, we start with 19,000, then we itemize down, and then here is the number that we're giving you, and then there's a check, and then it's cashed, and as MKL says, the plaintiff, the payee, did not issue any receipt saying this was done only in partial satisfaction of what I believe is owed. It just cashed the check and filed suit. That's what happened here. A letter itemizing the deductions, and then cashed the check, and then nothing from the plaintiff saying I acknowledge receipt of this. This is partial payment of what I believe is owed. Under MKL, that's accord and satisfaction. And in addition to the accord and satisfaction, I think it's important to remember – and this kind of gets to the next reason. Actually, it was going to be the reason I was going to lead off because the court invited briefing on it, and that is equitable estoppel because this all happened within the time period within which the defendants could have addressed any disagreement over that number. And not only do we have what I would suggest is a concealment of the fact that she disagrees with that number, but an active and intentional concealment because by plaintiff's own submissions in this case, she met for an hour with a CRLTO lawyer on July 18th. While that period of time was still open, that the defendants could have addressed this. But there was no requirement under the ordinance that she notify the landlord that there was a dispute. Not like an interest. If there was an interest dispute, the tenant has a duty to notify the landlord, and the landlord has 14 days in which to respond. There's no requirement under this ordinance for a dispute with the damages. With regard to the interest, that is a penalty provision. So if you are a tenant and you wish to initiate that penalty, then the process starts with you. Correct. You have to notify the landlord that you disagree with the dispute. And that initiates a penalty provision under the ordinance. If the landlord agrees with your calculation, the landlord owes you $50, plus the difference of the interest. And if the landlord disagrees and stands on the calculation, then you can bring an action, and if the court agrees with you, then the landlord is going to owe you two times the security deposit. That is a penalty, a separate civil penalty under the ordinance, as opposed to a carved out, here's the notice and opportunity to cure, versus the others, there's no notice or opportunity to cure. The equitable stop is an equitable principle, and it prevents what I would suggest occurred exactly in this case, and that is a very, as we indicated in the briefs, the people in the state of Illinois have a duty, a responsibility, to take reasonable diligence to avoid losses. And there's nothing that could have been more reasonably done, more easily done, than while this period is open, advise the Buells. She knew their numbers. She called them. She testified that she called them. She testified she spoke to Helga Buell, and that she was hung up on it. She also testified that she never called to discuss the amounts that were, she called, but not to dispute the amounts at issue. Whatever she was calling about, when you're premising the equitable estoppel on a failure to have a discussion when somebody hangs up on you, when you're calling for one purpose, would you then engraft upon that if there was an obligation to call in the first place after somebody has hung up on you in a conversation, but you have to call them again for a different purpose? I'm not sure how that flows. My recollection of the record is that that time where she was hung up on was with regard to fixing the property. I may not be remembering that correctly, but that would be before the return of the security deposit and the itemization. But you see how that could factor into someone's decision that it's futile to try to contact someone to raise a new issue when you were hung up on by the person who you're claiming she had an obligation to speak to. It's a complicating factor, at least, Mr. Crane. Perhaps, but at the same time, if Illinois imposes upon you the obligation to take reasonable steps, even though you think that you might get hung up on, it's not an onerous task to try it again. After you've received this, and if you're hung up on, you're hung up on, then you've discharged any responsibility you have to... Even if you can't even utter the words before somebody hangs up on you? I mean, I think you'd probably be making the same argument if she was calling again for that purpose but never got a chance to even say what her dispute was, because, you know, if you're going to be hung up on by somebody, it's really a futile act, isn't it? I think that now we're engaging in speculation that the Buells would have hung up. I think what should have happened here is that she makes the call and we find out whether the Buells would have hung up or would have said, You know, you said that... Isn't it a little bit like Charlie Brown trying to kick the football and Lucy keeps pulling the football up and he keeps trying to kick it and he ends up on his rear end? I mean, does he have an obligation to try to kick the football again? Because the task is far less onerous than kicking a football and landing on your back, it's picking up the phone and calling. I got this itemization. I disagree that I was responsible for that. Yes, I think she should have picked up the phone and it's undisputed that she didn't. She agreed. She never tried to communicate about this. That's subjective. Right. And that's, again, not an onerous task to undertake, styling a number. And if the Buells respond that way, then maybe we're not here. So it kind of bounced back and forth a bit, but the reasons that I believe reversal are appropriate are accord and satisfaction and it's not just MKL, but it's also acquaintance, which says that you can't deposit a check and get the benefit of the pay without bearing the burden of the compromise. And it's also the... But then that is based upon that there actually was a compromise being proposed initially by the mailing of the check. And if that doesn't exist... Well, we know that monies are owed for the security deposit. So, I mean, we start with that, right? I mean, unless the damage exceeded 1575, which has never been suggested, there was going to be monies owed. I think the allusion is to the fact that the lack of, I guess, a formal demand articulating a number by the plaintiff to get the process started, as opposed to the defendants getting the process started by saying, 1575 minus 220 minus $3.40, here you go. But either there's a dispute or there's not a dispute. If there's not a dispute, it's the defendant's number, and if the plaintiff disagrees with that, then there is a dispute. It's inherent to it. I don't think it's implied. I think it's inherent that the reason we're here is because they disagree with the number. If they agreed with the number, there wouldn't have been a lawsuit. So the dispute is inherent to the entire action. And there was a letter, itemization, right within, right? Just like, okay. You know, I've read MKL. And, you know, with that endorsement on there, with this check, I think the language was, with this correspondence we consider all open issues between lacrosse, litho supply, and MKL prepress closed, at the time that they're sending a check that is a much lower amount than what was demanded. That is sending flares up that if you accept this check, you're doing it with the understanding that this closes all the disputes. That's absent from this case, right? And you may not think it's significant, but it is absent from this case. The language in the MKL letter does not mirror the Buell letter, agreed. But in the context of a tenancy, which by agreement ended in May, and a singular item of damage identified, corrected, paid for, and then a security deposit returned less than that, I don't see how any reasonable person could receive that communication and think that there's still anything open. Would a reasonable person say, oh, I have everything left, but $225.30, I expect a further communication? I mean, there would be no reasonable expectation at all. This closed it. The tenancy is over. She's out of the place. There was a single item of damage that was discussed and paid for. All itemized. There's nothing further to be received. Nobody would expect anything further. It is right. She didn't track that exact language, but the facts track that situation. This ended it. Would you like to reserve some time? Yes, please. Thank you very much. My pleasure. Thank you for listening. Anything you'd like to say? Counsel. Your Honors. May it please the Court. Good morning. My name, again, is Mark Silverman for the appellee, Jessica Boyer, former tenant in this rental. We think, as we have described in the briefs, that this case should be left as it was entered by the trial court. The issues that have just been talked about, I think, are addressed in the briefs, and I think the record plays a large role in this case. I think we have the legal principles, but I think the actual facts and what's actually in this record are important. I guess I'd like to add. The $3.40 dispute turning into thousands and thousands of dollars, those facts? That's a fact in the record. I think the case is not characterized properly as a case where this tenant just sued over her security deposit being sent by certified mail and certified mail costs being deducted. This case, as is evident from the record, arose out of a tenant who did not agree with what she was being presented with by her landlord at the time. But wasn't she satisfied at the beginning? I mean, it's almost like until you got involved, the matter was resolved. I'm not sure from what that can be discerned in this record. For me, reading the facts. Okay. I mean, wasn't the situation that the damage, the purported damage was pointed out to her? She basically accepted responsibility by asking to be able to repair it herself, failed to repair it herself, then received what either is or is not a receipt, but if you assume it is a receipt for the repair being done and the itemized statement, then the only issue that really would be in dispute would be the issue of whether there was an agreement to have $3.40 for the mailing deducted. And if there was such an agreement, whether that agreement is permissible under the ordinance. From what I see in this, and what I think the record does disclose, is that this tenant at around the time she was moving out was told that the landlord was going to claim damage. Her testimony when she was asked expressly, did you agree or did you accept responsibility for this damage, was no. She said no. At the walkthrough, she said in her testimony that when the damage was pointed out, she did not accept responsibility, but because the landlord said they were going to fix it, she said, well, I'd like to have a chance to fix it myself. Because as she did testify, she believed. Why would she fix it if it wasn't the damage she caused? She was told, according to her, by Werner Bull at this walkthrough, that they were going to repair it. They held her responsible. She said she didn't accept responsibility, but the landlord, Werner Bull, was telling her at that time, we're holding you responsible for this. And her testimony was, confronted with that, she offered or asked, can I come and fix it myself? Because she said in her testimony, I knew it would be expensive. She believed that if they were going to have someone come in and do work on this, it was going to be expensive. She wanted to protect herself, if possible, from that cost. So she offered or asked, can I do it myself? And then she didn't do it. And then she didn't do it. And in this record, we have a letter from Ms. Bull, Helga, which says, we can only have licensed contractors do the work. That letter is from June. I think that in light of getting a letter from her landlord, Helga Bull, after this visit to the property with Werner Bull, telling her they can only have licensed contractors do the work, is a reasonable explanation for her not going back in and doing it herself. She's been told, we're going to have someone else do it ourself. In this case, her testimony was consistent. This damage was not caused by her. It was there when she moved in. I understand the landlord's testimony was different. Ms. Bull testified, well, we had it decorated before she moved in, and she caused it. So there's a dispute about that. But at the end of the trial, the judgment of the court was, I find that this damage was normal wear and tear. And so, respectfully, when I do read this, my impression is that this is a tenant who, before she ever knew about lawyers, heard about the RLTO, was upset about a deduction that she anticipated and actually had made from her deposit for a couple hundred dollars for damage that she did not believe she was responsible for. How does it become wear and tear when you make an indent of, what, an inch into a wall? How is that normal wear and tear? What are you bringing into your apartment every day that would make that type of damage? In this case, I've never seen the damage. I've heard about the damage, the testimony. The judge found, specifically, it was normal wear and tear. What evidence was in the record that said it was normal wear and tear? Who testified that it was? She testified that it was that way when she first moved in. That's not normal wear and tear. But still, you're accountable for that if he was accepted. My belief is that actually 08OD says you're responsible or you can have amounts deducted from your deposit for damage caused by the tenant or persons in the property under the tenant's permission, invitees. But if it's there before you move in, you're accountable. Even if that's not the case, if you have a circumstance where this is going to be repaired, you say that you're going to repair it or want the chance to repair it. You then don't repair it, and when there is a deduction for the repair, you cash the check. You say nothing. You don't give any clue as to the existence of any dispute whatsoever. And then for, let's add in the amount of the repair, for less than $300, you have a situation where it mushrooms into many thousands of dollars in damages. Is that what this ordinance is really created to do? Or is it created to give people a reasonable chance at contesting the reasonableness of deductions with their landlord? You have a situation here where even in the best reading of your record, there is no smoking gun, no express dispute uttered by your client to the other party, saying, wait a minute, we have a dispute about whether this is reasonable damage. We have a dispute about whether the amount you're charging is appropriate. And it's just sit back, sit back, sit back, and hit the multiplier button. Isn't it? This ordinance can only be interpreted from what's written in it and the cases that have already interpreted it. And we have as a guideline, I think, cases where, for example, in the Solomon case, which talks a little about accord and satisfaction, just the facts in that case tell us the tenants got 100 percent of their money back with the interest. It was a couple days late, though, and it was held because the ordinance says these rules and these guidelines. The landlord does not follow them. The tenant is entitled to the remedy that's provided. And the reasons for why those remedies were installed, I can't claim to know them, but we have some guidance from this court from the past telling us that there is at least assumed to be or felt to be some disparity in the bargaining power. And, in fact, that is true. A landlord has the money already. They've got the whole deposit. They can give it back or they can keep it. And to go back to what you were asking about, we already talked about this tenant not being silent. Maybe the timing is significant, and we would have to acknowledge she didn't make any phone calls. That's true. After she was hung up on, after the walk-throughs, after she sent her letter, she didn't keep sending letters or call. That's true. But we know, I think, from previous cases from this court. Where is the notice to the landlord that anything was being disputed at all? After move-out or after the call in the letter? There isn't any. There isn't any. That's true. See, that's the troubling aspect. Now, it may well be that the ordinance gives no remedy to the landlord under those circumstances as it's currently written. But I think it's disingenuous to suggest that the purpose of the ordinance in the first place was to permit someone not to raise any indication whatsoever of the existence of a dispute and then use it to multiply damages as we've seen in this case. This landlord would have been entitled to sue this tenant for extra damages after having sent this check back, under the Dad Here case and under a case interpreting our Illinois State Return Act, Mala v. Barkowskis from the 1980s out in Naperville. They both have told us that when we have these kinds of laws that dictate what you must do if you want to withhold from a deposit, which is held for damage and rent, you have to send these notices and receipts. But if you don't, a landlord is always entitled, those cases tell us, to return the deposit and still sue them after that for damages or rent. It's not felt to be inconsistent or somehow misleading to the tenant to give them their whole deposit back and then turn around and sue them for what you were entitled to keep from their deposit but didn't. That's the difficulty we have for the tenant's perspective is turning this around on the tenant when we know the ordinance is meant to be something the landlord discloses to the tenant and we know these obligations are on the landlord and because the ordinance doesn't tell us anything about what the tenant does, I think it's fair to assume those obligations, which aren't written, don't become imposed on the tenant to tell the landlord you violated the ordinance.  Under the equitable estoppel theory, I think we would have needed the landlord to show or testify at least what she was going to do differently. If the landlord had registered an objection, what would she have done? I think it's fairly, it's really beyond question almost that if the amount was $3.40 for postage and they were in a situation where they were risking $3,000 in damages plus attorney's fees that any sane person would have given them $3.40. How about the $220? That's the difference, but then we get to the issue of where the notice of any dispute was. That's my point, I believe, is that since there's no requirement that the tenant give any such notice, and since we don't have evidence that if she had given such notice, anything would have happened different. Would the landlord have said, well, someone disagrees with me. I'll have to give them their money back, and I will give them their money back promptly. Well, I think they would then be on notice that if they didn't give the money back and they were found to have improvidently withheld the money, they would be risking far more than $226 or whatever it was. And so there is, to me, a distinction because you're saying to the landlord without express notice of the existence of a dispute that just sending that check with that deduction in and of itself creates a violation of the ordinance. The specific violations are withholding past the 45 days for amounts that were either for normal wear and tear or withheld without a copy of a paid receipt or for that deduction with a certified mail. And on the certified mail, it might be significant that in this record what's relied on is her agreement is actually Werner's testimony that basically she asked for certified mail and he said, well, we don't usually do that, but okay, we'll take it out of your deposit. There's none of him testifying, she said, okay, or I agree. I mean, it's not in there that she agreed to that. She specifically denies that that even happened, but even from Werner's testimony. And again, as we pointed out, the person who sent this and made the deduction is Helga,  She's saying we can only deduct for licensed contractors, or we can only have licensed contractors do work. Meanwhile, Werner has told my client that she can come in and repair it herself. So she's getting different messages from Werner Bull and Helga Bull, and Helga is relying on Werner Bull's transmission of what my client supposedly told him. All of this comes back, I think, to what's the reasonableness of the landlord not following the ordinance. In fact, she's found to have not followed the ordinance. I don't think we can pin this on anything the tenant did or didn't do, and we can't show that this tenant even had knowledge of what was coming out of her money before the landlord's time to make a change, if the landlord was even going to make that change, was expired. So we don't know that this tenant was even engaging in the allegedly concealing or deceitful conduct at a time when the landlord could have done anything that would have changed their liability under this ordinance, if that liability exists. But do your honors have any other questions? Thank you. Thank you. Thank you. Just a couple of things that I think should be remarked upon with regard to counsel's argument. First, the suggestion that the June letter from Helga Buell referring to licensed contractors had anything to do with anything is incorrect, because it was the plaintiff's contention all along that she never got that letter. And even as of the date of trial, and I'm reading now from the transcript of page 265, plaintiff didn't get it, meaning that letter that we're talking about. But, you know, we have to acknowledge that they produced a receipt, because she had the priority mail receipt, so they probably put something in the mail. We do not think that Mrs. Buell is not a truthful person. So that letter was not the basis of any action by the plaintiff, because she said all along, I never got it. The Solomon case identified by counsel as suggesting that accordant satisfaction is not available in the landlord-tenant ordinance is in the opposite, because the issue in Solomon was whether the penalty under the landlord-tenant ordinance could ever be subject to the accordant satisfaction. And it specifically left open the idea that if there is no penalty, and it's just an issue of the security deposit itself, whether there could be an accordant satisfaction. And here, if the amount is correct that was sent by Mrs. Buell, then there is no penalty. So Solomon is an opposite, because it specifically left open the issue that is raised in this case. And I think just in general, to comment on the argument, and certainly the observation that you raised in your question, Justice Epstein, if there is a tenant with a real, as opposed to what we assert in this case as a manufacturer, a real CRLTO ordinance violation, that tenant has nothing to worry about if this Court applies the doctrine of equitable estoppel. There's six elements there. A real violation is not going to give rise to those six elements. It's not. That tenant has nothing to worry about. A tenant with a real violation of the CRLTO has nothing to worry about if the statewide obligation of mitigation of damages is applied. A real CRLTO violation victim has nothing to worry about by the application of that principle. But a person who identifies a loss and can take reasonable steps to avoid it, that person, who I believe is the plaintiff in this action, does lose the ability to reap the windfall if those principles are applied. And I think that this case, these facts, suggest why those principles should be applied. We shouldn't be here today. If she thought she didn't agree to $3.40, she should have said something. And then it would have been in the Buol's Court. They could have disputed it, or my guess is the same as yours. Any seeing person would say, you know what, you said you were going to pay for it, but you know what, we're not going to fight you over $3.40. Here you go. And that would have been it. She didn't give them that opportunity. She should be equitably estopped from asserting this cause of action by depositing her check according to satisfaction, should be deemed and applied, and by application of the mitigation of damages requirement, she should be precluded from recovery, as well as the other things that we assert in our brief. And that is why we plead for reversal. As a last point, we've gone over time. I'm sorry. Because of primarily me. I'd like to hear you address the point of the distinction between the application of this ordinance that limits the circumstances under which the stakeholder, that is the tenant, can withhold certain amounts, on one hand, and the possibility that the landlord, in returning all of this, if they assert damage or some other act against the plaintiff-tenant, in this case, could file a claim. The CRLTO, I think that I'm going to answer the question, but please forgive me. If I've asked it poorly, let me just say it again. Okay. The difference is the ordinance says, you, landlord, have taken this money as a prophylactic measure. And regardless of what else the tenant might be liable for, there's only limited circumstances under which you can fail to return the entirety of that corpus of money. It doesn't preclude you from suing for anything else. And the question then becomes the circumstances under that ordinance where you can avail yourself of the money that you've taken at the beginning of the tenancy. I think, and forgive me, I'm sorry. I think I agree with that. I think I agree, how I'm hearing the question, is that there are two approaches that can be taken. One would be to deduct it under the CRLTO, and the other would be to return the whole corpus and then sue for what you believe is owed. So I ---- I know you appreciate that distinction. Okay. I guess my question is, doesn't that then say that regardless of the actions of the tenant, which your client may object to, if it doesn't fall within the specific circumstances of the ordinance giving you the permission to withhold it, haven't you created a violation of that ordinance? If you don't comply with the ---- I'm sorry if I'm going to be saying a truism here. If you don't comply with the ordinance, then correct. You didn't comply with the ordinance, and you're responsible. Here, there was acknowledged damage that she said, first, I'll fix, and then didn't fix, but took responsibility for it. And there was no ---- I mean, my clients testified, and there was nothing to rebut it, that they actually got it fixed, that they actually incurred the $220, in fact introduced a trial with something they didn't yet have in this 60-day period, and that is the back of the check, showing that it was, in fact, paid. So there's no dispute that she paid $220 to fix damage that was incurred, and I think under any reasonable ---- I mean, the plaintiff herself acknowledged that this was going to be expensive to repair. So the deduction was for that damage, plus the postage, which my clients said, this was our agreement. And the CRLTO does prohibit certain agreements between landlord and tenant, but this is not one of them. And if the ordinance does not prohibit an agreement, well, then we just fall back on the freedom to contract, which is there. And this certainly does not prohibit it. She couldn't unilaterally deduct it. I agree with that entirely. But that's not what we have here. We have an agreement. I hope that answers the question, and if it doesn't, I'm happy to help answer it. Thank you. That's enough. Thank you. Thank you for your arguments, and we'll get back to you as soon as there's a determination. Thank you both.